UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PELEUS INSURANCE COMPANY

                Plaintiff,                Civil Case No.:

v.

**COMPLAINT FOR**
**DECLARATORY RELIEF**

RUBIN DEVELOPMENT AND CONSTRUCTION,
INC., 856 BUSHWICK AVENUE REALTY LLC
AND PAUL ASHRAM

                Defendants.
-------------------------------------------------------------x

Plaintiff, PELEUS INSURANCE COMPANY (hereinafter referred to as "Peleus" or "Plaintiff"), by its attorneys LONDON FISCHER LLP, states the following as and for its Complaint against Defendants, RUBIN DEVELOPMENT AND CONSTRUCTION, INC. ("Rubin"), 856 BUSHWICK AVENUE REALTY LLC ("856") and PAUL ASHRAM ("Ashram").

**NATURE OF THE ACTION**

1. In this action, Peleus seeks a declaration that it is does not owe insurance coverage under Policy # 600 GL 0205866-00, which was issued to Rubin and 856 for the November 11, 2021 to November 11, 2023 policy period ("Peleus Policy"), in connection with an underlying action captioned, *Paul Ashram v. Rubin Development and Construction, Inc. and 856 Bushwick Avenue Realty LLC*, Supreme Court, Bronx County; Index No.: 818663/2022E ("Underlying Action"), and based on a failure to comply by Rubin and 856 with the terms and conditions of the Peleus Policy.

2. This action further seeks a declaration that Peleus is entitled to withdraw its defense of Rubin and 856 in connection with the Underlying Action, and recoup all costs and expenses

incurred to date on behalf of Rubin and 856, due to their failure to comply with the terms and conditions of the Peleus Policy.

## PARTIES

3. At all times material hereto, Peleus was and is a Virginia insurance company with its principal place of business in Cook County, Illinois.

4. At all times material hereto, Rubin was incorporated in New York with its principal place of business in Brooklyn, New York.

5. At all times material hereto, 856 is a limited liability company established in New York with its principal place of business in Brooklyn, New York.

6. At all times material hereto, Ashram was a resident of Bronx, New York and commenced the Underlying Action in Bronx County Supreme Court.

## JURISDICTION AND VENUE

7. Subject matter jurisdiction is based upon 28 U.S.C.A. § 1332 and 28 U.S.C.A. § 2201 because the action involves citizens of different states and the amount in controversy exceeds the sum of $75,000. An actual controversy exists between the parties regarding their respective rights and obligations under the relevant policy of insurance.

8. Personal jurisdiction over Rubin is proper as it is a New York corporation and conducts business in the State of New York.

9. Personal jurisdiction over 856 is proper as it is a New York company and conducts business in the State of New York.

10. Personal jurisdiction over Ashram is proper as at all times material hereto, he resided in Bronx County, New York.

11. Venue is proper under 28 U.S.C.A. § 1391 because a substantial part of the events giving rise to the claim occurred in this district.

## BACKGROUND

12. On March 6, 2023, Peleus issued a reservation of rights to Rubin and 856, advising that it was investigating the claim, and expressly reserved all rights under the Contractor Warranty – Split Schedule Endorsement in the Peleus Policy. Peleus retained Hannum Feretic as defense counsel on behalf of Rubin and 856.

13. The Contractor Warranty – Split Schedule Endorsement in the Peleus Policy contains the following conditions to coverage under the Colony Policy:

**CONTRACTOR WARRANTY – SPLIT SCHEDULE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

| Schedule A |
|---|
| **No Coverage Applies If Contractor Conditions Not Met** |
| **Description of Designated Operation(s):**<br>All work, activities, or operations involving land excavation, building foundation formation, load bearing beam installation, load bearing beam removal, structural steel installation, structural steel removal, elevator shaft work, or work, activities, or operations performed on the exterior of any building or structure. |
| **Specified Location(s):** |
| **Contractor's Commercial General Liability Limits of Insurance Requirements:**<br><br>Each Occurrence Limit: $5,000,000<br><br>General Aggregate Limit: $5,000,000<br><br>Products/Completed Operations Aggregate Limit: $5,000,000 |

> **SCHEDULE B**
>
> **No Coverage Applies If Contractor Conditions Not Met**
>
> **Contractor's Commercial General Liability Limits of Insurance Requirements:**
>
> Each Occurrence Limit: $1,000,000
>
> General Aggregate Limit: $2,000,000
>
> Products/Completed Operations Aggregate Limit: $2,000,000

A. **SECTION IV – COMMERCIAL GENERAL LABILITY CONDITIONS** is amended by the addition of the following:

    **1.** **No Coverage Applies If Contractor Conditions Not Met** (SCHEDULE **A** above applies)

We will have no duty to defend or indemnify any insured if prior to the commencement of any work the insured fails to satisfy all conditions precedent to coverage set forth below with respect to the designated operations described and locations specified in SCHEDULE **A** above. The insured agrees that we need not demonstrate any prejudice to us as a result of the insured's failure to comply with any of the below conditions in order to enforce those conditions precedent to coverage.

The insured hereby warrants and agrees that any "contractor" has complied with all of the following conditions prior to the commencement of any work performed:

    **a.** The "contractor" has signed and executed an agreement with the insured which contains the following provisions:

        **(1)** An agreement to defend, indemnify, and hold the insured harmless, to the fullest extent permitted by law, against all losses arising out of the work performed by or on behalf of any such "contractor", including all expenses and legal fees incurred to defend claims alleging such losses; and

        **(2)** A requirement for the "contractor" to name the insured as an Additional Insured under their Commercial General Liability policy on a primary and non-contributory basis in favor of the insured;

    **b.** The "contractor" has maintained "adequate insurance";

    **c.** The "contractor" has provided the insured with current Certificates of Insurance evidencing Commercial General Liability and Workers' Compensation and Employer's Liability coverage; and

    **d.**    All documents required must be kept on file and made available at our request.

**2.**    **No Coverage Applies If Contractor Conditions Not Met** (SCHEDULE **B** above applies)

We will have no duty to defend or indemnify any insured if prior to the commencement of any work the insured fails to satisfy all conditions precedent to coverage set forth below with respect to all operations and locations not described or specified in SCHEDULE **A** above. The insured agrees that we need not demonstrate any prejudice to us as a result of the insured's failure to comply with any of the below conditions in order to enforce those conditions precedent to coverage.

The insured hereby warrants and agrees that any "contractor" has complied with all of the following conditions prior to the commencement of any work performed:

    **a.**    The "contractor" has signed and executed an agreement with the insured which remains in force and effective until the date on which the work is completed and contains the following provisions:

        **(1)**    An agreement to defend, indemnify, and hold the insured harmless, to the fullest extent permitted by law, against all losses arising out of the work performed by or on behalf of any such "contractor", including all expenses and legal fees incurred to defend claims alleging such losses; and

        **(2)**    a requirement for the "contractor" to name the insured as an Additional Insured under their Commercial General Liability policy on a primary and non-contributory basis in favor of the insured;

    **b.**    The "contractor" has maintained "adequate insurance";

    **c.**    The "contractor" has provided the insured with current Certificates of Insurance evidencing Commercial General Liability and Workers' Compensation and Employer's Liability coverage; and

    **d.**    All documents required must be kept on file and made available at our request.

**B.**    The **DEFINITIONS** Section is amended by the addition of the following:

"Adequate insurance" means Commercial General Liability Insurance, Workers' Compensation and Employer's Liability Insurance written by an insurance carrier with an A.M. Best rating of not less than A-VII and which:

    **a.**    Remains in full force and effect without a lapse in coverage from the date on which the contract for work being performed for the insured or on the insured's behalf is executed until the date on which the work is completed;

  **b.**  Provides Commercial General Liability Limits of Insurance for such operations that are equal to or greater than the Limits of Insurance indicated in SCHEDULE **A** and **B** above;

  **c.**  Provides Workers' Compensation and Employer's Liability Insurance in compliance with the statutes of the applicable state;

  **d.**  Includes coverage for "bodily injury" or "property damage" arising out of work performed by the "contractor" or on behalf of the "contractor" per the agreement with the insured;

  **e.**  Does not exclude any claim, "suit", loss, cost or expense arising out of any "bodily injury" to any "worker" of the "contractor"; and

  **f.**  Does not contain any conditions or provisions that preclude coverage based on requirements for hiring or contracting with subcontractors or independent contractors.

"Contractor" means contractors, subcontractors, independent contractors or any other person or entity hired to perform work for the insured or on the insured's behalf.

"Worker" means any "employee", "temporary worker", "leased worker", "volunteer worker", apprentice, intern, casual laborer, borrowed employee, borrowed servant, independent contractor or subcontractor, or any person hired to retained by them, that performs work, whether directly or indirectly for any "contractor".

14. On May 16, 2023, Peleus tendered this matter to Rubin and 856's subcontractor, Aujla Electric ("Aujla"), and Aujla's insurer, Chubb North American Claims ("Chubb").

15. On May 24, 2023, Chubb declined coverage based upon the Employers' Liability Exclusion Endorsement in the Chubb Policy which precludes coverage for claims of bodily injury suffered by Aujla's employees, i.e., Ashram.

16. Chubb's denial of coverage under the Chubb Policy established a material violation of the Contractor Warranty – Split Schedule Endorsement by Rubin and 856, including that their subcontractor did not name them as additional insureds and did not maintain "adequate insurance" per the endorsement.

17. On June 28, 2023, Peleus subsequently disclaimed coverage to Rubin and 856 pursuant to the Contractor Warranty – Split Schedule Endorsement in the Peleus Policy, although it has continued to provide a defense to them subject to a ruling on coverage in this action.

18. Peleus has been forced to defend Rubin and 856 in the Underlying Action and has incurred defense costs and expenses because of Rubin and 856's failure to comply with the terms and conditions of the Peleus Policy.

19. An actual controversy exists between Peleus and Rubin and 856 with respect to Peleus' duty to defend and to indemnify Rubin and 856 in connection with the Underlying Action.

20. Peleus has no adequate remedy at law.

## CAUSE OF ACTION FOR DECLARATORY RELIEF

21. Peleus repeats and re-alleges each and every allegation set forth in Paragraphs "1" through "20" above as if fully set forth herein.

22. The Peleus Policy only provides coverage pursuant to its terms and conditions.

23. The Contractor Warranty – Split Schedule endorsement required Rubin and 856 to secure an executed contract with all subcontractors, that the subcontractors name Rubin and 856 as additional insured on their policies, that the subcontractors maintain "adequate insurance" as defined by the Peleus Policy, and that the subcontractors hold Rubin and 856 harmless and indemnify Rubin and 856.

24. Rubin and 856 violated these requirements as no subcontractor maintained adequate insurance as defined by the Peleus Policy, and no subcontractor held Rubin and 856 harmless or indemnified Rubin and 856.

4883-4500-6501, v. 1

25. As such, the conditions precedent to coverage set forth in the Contractor Warranty – Split Schedule endorsement were violated by Rubin and 856, thereby removing any coverage obligation for the Underlying Action.

26. Accordingly, no coverage is afforded under the Peleus Policy for the Underlying Action.

27. By reason of the foregoing, Peleus is entitled to a declaration that no coverage exists under the Peleus Policy for the Underlying Action.

28. By reason of the foregoing, Peleus is also entitled to a declaration that Peleus is entitled to withdraw its defense of Rubin and 856 with respect to the Underlying Action and recoup the amounts incurred in connection with the defense of Rubin and 856 through judgment herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment as follows:

a. Declaring that Peleus is not required to provide coverage in connection with the Underlying Action;

b. Declaring that Peleus is entitled to withdraw its defense of Rubin and 856 in connection with the Underlying Action;

c. Declaring that Peleus is entitled to recoup those amounts incurred in connection with Rubin's and 856's defense in the Underlying Action through judgment herein;

d. Awarding Peleus the costs and disbursements of this action; and

  e. Awarding such other relief as this Court may deem just and proper.

Dated: New York, New York
February 14, 2024

        LONDON FISCHER LLP

        <u>/s/ William J. Edwins</u>
    By: James Walsh
      William J. Edwins
      Attorneys for Plaintiff
      Peleus Insurance Company
      59 Maiden Lane, 39th Floor
      New York, New York 10038
      (212) 972-1000
      Our File No.: 417.0567222

4883-4500-6501, v. 1